## Boyd's Exor. v. Commonwealth, By, et al.

(Decided October 10, 1912.)

### Appeal from Laurel Circuit Court.

1.  Domicile—Definition and Classification.—Domiciles are of origin
    and of choice. Domicile of origin is the place of one's birth, or
    such other locality, to which it may be changed by his parent or
    guardian, during his minority. Domicile of choice is that selected
    by a person to displace his former domicile.

2.  Taxation—Domicile of Choice—Acquisition of.—The acquisition
    of a domicile of choice requires, not only the intent to abandon
    the former domicile and to establish a residence in a new locality
    but also an actual abode therein for a time, however short. Where
    a resident of this State, intending to abandon it and take up a
    permanent residence in Texas, left on the 9th of September for
    point of destination, going by easy stages, reaching there Septem-

ber 24th, his abandonment of his former domicile and his acquisition of the new one were incomplete and ineffective until September 24th; hence, personal property, in his possession on September 15th, was properly listed for taxation in this State, as of that date.

J. W. ALCORN for appellant.

E. H. JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Robert Boyd had been for many years a resident of Laurel County, Ky. On the 9th of September, 1903, he stated to his friends that he intended leaving Kentucky and making his home thereafter in Texas. In furtherance of his expressed intention, he left his home, went to Louisville, from there to St. Louis, where he arrived on the 11th of September, and from that point traveled in a leisurely way toward his destination, Bonham, Texas, which point he reached on the 24th of September. He remained in Texas until sometime in the late fall or early winter, and, not being in good health returned to Kentucky. He was registered as a legal voter of London, Laurel County, sometime in October, 1904. His property was listed for taxation in the county of Laurel in the falls of 1904, 1905 and 1906, and he died in November, 1906. He frequently expressed an intention of returning to Bonham, Texas, though he never did so. He did not list his property for taxation in the fall of 1903 prior to going to Texas, and the State, through one of its revenue agents, sought to compel him to do so. In the litigation which followed, it appeared that he was the owner of personal property of the value of $35,000 on September 15, 1903, the trial judge in the county court found, from the evidence, that he was not a resident of Bonham, Texas, but of Laurel County, Ky., and hence was answerable to the State for taxes upon this unlisted property. He appealed from the judgment of the county court, but, before the case was tried in the circuit court, he died. The litigation was continued against his executor, and, upon final hearing, the chancellor was of opinion that the findings in the county court were correct and entered a judgment accordingly. The executor appeals.

Several questions are raised upon the method of procedure etc., but the real, and in fact the only, question of merit before us upon this appeal is: Was Robert Boyd, on September 15, 1903, the date upon which, under the statute then in force, personal property in this State was subject to taxation, a resident of Laurel County, Kentucky? If he was, then it is conceded that his estate is liable for the taxes on the amount of personalty the court found he should be assessed with. If, upon the other hand, he was upon that date a resident of Bonham, Texas, the judgment should be reversed.

As stated, prior to September 9, 1903, he had expressed an intention of leaving Kentucky and making Texas his home. He had arranged with a relative there about lodging, etc., and in furtherance of that expressed intention, left Kentucky on the 9th of September, but did not arrive at his destination in Texas until September 24th, or nine days after the date upon which the property should have been listed for taxation in Kentucky, if liable for taxation here. Upon the 15th of September, he had not reached the border of the State of Texas. So, we are confronted with the naked question: Did his determination to make his home in Texas and his leaving Kentucky, for the purpose of going there, have the effect of giving him a domicile in that State before he actually reached it and settled there? If it did, then the was not, on the 15th of September, a resident of Laurel County, for no principle is better settled than that one cannot have two domiciles at one and the same time. It is also true that every one must have, at all times, a legal residence somewhere.

The place of one's birth is his domicile of origin; during his minority, he is without power to change this, though it may be changed for him by his parent, guardian of the person having legal custody of him. After his majority, he is free to change it, and when so changed, the new domicile is termed domicile of choice. One may have several homes, but can have only one legal residence. In this age of commercial and social activity, it is not unusual for one, whose circumstances in life permit, to live in the far south in the winter, in, the north in the summer and at some intermediate point, during the other seasons. Thus, he has three homes, only one of which can be his legal domicile; and this is not changed, but remains the same until he elects to sur-

render his legal domicile and adopt another, in its stead. This intent to change one's domicile must, of course, in order to make it effectual, be executed; that is, he must take up an actual abode at the point selected as his domicile of choice. It is difficult, at times, to determine just where one's legal residence is. Expressions of intent are not alone sufficent; there must be some evidence supporting these declarations of intent. Usually questions of legal residence have arisen in cases where the party resides part of the time at one place, and part of the time at another.

On the question of how a domicile or residence is acquired, the rulings of courts of last resort are not uniform, but the weight of authority is to the effect that, in order to acquire a domicile of choice, there must concur two things: First, an intention to change; and second, the taking up of an actual abode at the place selected as a new domicile. While not directly involved, this question was inferentially decided in the case of Tipton v. Tipton, 87 Ky., 243. The court had under consideration the construction of section 423 of the Civil Code, which provides:

"The plaintiff, to obtain a divorce, must allege and prove, in addition to a legal cause of divorce. * * *

"1. A residence in this State for one year next before the commencement of the action."

It appears that appellant had abandoned his home in Madison County, left the State and, during the greater part of six years, remained practically all of the time out of the State. The trial court was of opinion that this code provision required that the plaintiff should be an actual resident of the State for one year before the commencement of the action, and dismissed the plaintiff's petition. The case was appealed to this court, and in the course of the opinion the court said:

"There is a broad distinction between a legal and actual residence. A legal residence (domicile) cannot, in the nature of things, co-exist in the same person in two States or countries. He must have a legal residence somewhere. He cannot be a cosmopolitan. The succession to movable property, whether testamentary or in case of intestacy, except as regulated by statute; the jurisdiction of the probate of wills; the right to vote; the liability to poll tax, and to military duty, and other things, all depend upon the party's legal residence

or domicile. For these purposes he must have a legal residence. The law will, from facts and circumstances, fix a legal residence for him, unless he voluntarily fixes it himself. His legal residence consists of fact and intention; both must concur; and when his legal residence is once fixed, it requires both fact and intention to change it."

In Dicey on the Conflict of Laws, at page 106, the author says: .

"The only principle which can be laid . down as governing all questions of domicile is this, that where a party is alleged to have abandoned his domicile of origin, and to have acquired a new one, it is necessary to show that there was both the factum and the animus. There must be the act, and there must be the intention."

"A new domicile is not acquired until there is not only a fixed intention of establishing a permanent resi-dence in some other county, but until also this intention has been carried out by actual residence there."

In 14 Cyc., 838, we find:

"Domicile of choice is entirely a question of resi-dence and intent or, as it is usually put, the factum and the animus. Both must concur in order that the domicile may be deemed established."

The character of residence and the time it is occupied are unimportant, but there must be an actual occupancy of the residence chosen for some time, however short, in order that the change of residence may become effective. 14 Cyc., 839.

In Ennis, et al. v. Smith, et al., 14 Howard, 400, the court had under consideration, among other things, the question of domicile of General Kosciusko, and in the course of the opinion said upon this point:

"Kosciusko's domicile of origin was Lithuania, in Poland. The presumption of law is that it was retained, unless the change is proved, and the burden of proving it is upon him who alleges the changes." * * *

"But what amount of proof is necessary to change a domicile of origin into a prima facie domicile of choice? It is residence elsewhere, or where a person lives out of the domicile of origin. That repels the presumption of its continuance, and casts upon him who denies the domicile of choice, the burden of disproving it. Where a person lives, is taken prima facie to be his domicile, until other facts establish the contrary. * * * It is

difficult to lay down any rule under which every instance of residence could be brought, which may make a domicile of choice. But there must be to constitute it actual residence in the place, with the intention that it is to be a principal and permanent residence. That intention may be inferred from the circumstances or condition in which a person may be as to the domicile of his origin, or from the seat of his fortune, his family and pursuits of life. * * * A removal which does not contemplate an absence from the former domicile for an indefinite and uncertain time is not a change of it. But when there is a removal, unless it can be shown or inferred from circumstances that it was for some particular purpose, expected to be only of a temporary nature, or in the exercise of some particular profession, office or calling, it does change the domicile. The result is, that the place of residence is prima facie the domicile, unless there be some motive for that residence not inconsistent with a clearly established intention to retain a permanent residence in another place."

Applying the rule announced in the foregoing cases and texts to the facts in the case at bar, Robert Boyd did not become a resident of Bonham, Texas, until he located there on September 24th. Not having acquired a residence there prior to that date, his legal residence necessarily remained in Laurel County, Kentucky, until that time; hence, the property sought to be subjected to taxation, was properly assessable for taxation in that county, and the trial judge correctly so held.

Judgment affirmed.