### GATES v. COMMISSIONER OF INTERNAL REVENUE.

No. 4447.

United States Court of Appeals
Tenth Circuit.

Oct. 22, 1952.

Dayton Denious, Denver, Colo. (Denious & Denious, Denver, Colo., on the brief), for petitioner.

A. F. Prescott, Sp. Asst. to Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., and Morton K. Rothschild, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

PHILLIPS, Chief Judge.

This is a petition to review a decision of the Tax Court. It involves a deficiency in income taxes for the year 1944.

The question presented is whether Gates, the taxpayer, was entitled to report his income for the year 1944 on a community property basis. That question depends upon whether he was domiciled in Louisiana during the taxable year.

The Gates Rubber Company, located in Denver, Colorado, is largely owned by the taxpayer's family. The company was founded in 1911 by Charles C. Gates, who is president of the company and father of the taxpayer. Dividends from shares of stock in the company held in trust for the taxpayer constituted most of the taxpayer's income in 1944. In December, 1942, and prior thereto the taxpayer was domiciled at his parents' home in Evergreen, Colorado, situated about 25 miles west of Denver. The family also maintained a winter home in Honolulu. They resided at Evergreen during the summer. The taxpayer completed his high school education at Punahou School, in Honolulu. Thereafter, he attended the Massachusetts Institute of Technology and Stanford University. He graduated from the latter institution in December, 1942, with a degree of Bachelor of Arts in Mechanical Engineering at the age of 21 years. Shortly thereafter he made application for employment with the Firestone Rubber Company in its synthetic rub-

ber plant at Akron, Ohio. He went to Akron, Ohio, and at the suggestion of a Firestone Company official joined a group then in training to take over the operation of a new government-sponsored synthetic rubber plant at Baton Rouge, Louisiana, which the Firestone Company expected to operate. After about six weeks training in Akron, the taxpayer went to Baton Rouge and was employed in the design and engineering department of the synthetic rubber plant. The plant was not operated by the Firestone Company as had been first contemplated, but was operated by the Copolymer Corporation. In the summer of 1943, after the taxpayer had been at Baton Rouge in the employ of the Copolymer Corporation for about two months, he personally took a year's lease on a furnished house with ten acres of land, which he shared with three other bachelors until he married in November, 1943. After November the taxpayer and his wife alone occupied the leased premises. At the end of the year's lease, the taxpayer and his wife rented the premises on a month-to-month basis until the spring of 1945, when the leased premises were sold by the owner. The taxpayer then rented, for a term of one year, a furnished house in Baton Rouge. The taxpayer and his wife took all of their wedding presents, dishes, silver, and bedroom furniture to Baton Rouge and substituted them for other furnishings in the rented quarters and used them in the regular course of their daily living. While at Baton Rouge, the taxpayer had only one bank account, a checking account with the Baton Rouge bank. The taxpayer and his wife joined a local country club and the taxpayer contributed to local chapters of national charities. His wife joined the Junior Service League and engaged in civic work in Baton Rouge. She also took a pottery course at Louisiana State University. The taxpayer held a junior membership in the Denver Country Club. While he resided in Louisiana his Denver Country Club dues were paid by the accounting department of the Gates Rubber Company. In response to a letter from his father, the taxpayer left Baton Rouge in February, 1946, to become actively asso-

ciated with the Gates Rubber Company. After spending three months in Honolulu, the taxpayer and his wife arrived in Colorado in June, 1946. They lived for a short period with the taxpayer's father at Evergreen and then established their own home in Denver in August, 1946.

For each of the calendar years 1943, 1944, and 1945, the taxpayer's Federal income tax return was prepared and filed by A. M. Ewy, an accountant employed by the Gates Rubber Company. For each of the calendar years 1943, 1944, and 1945, the taxpayer made a state income tax return to the State of Louisiana, returning all of his income taxable by that state. He made no other state income tax return for those years. His original Federal income tax return for 1943 was filed in Louisiana. In that return he reported all income received as his separate property. He later filed an amended return for 1943 in Colorado, giving the address of the Gates Rubber Company as his home address. His original Federal income tax return for 1944, in which he reported all income received by him as separate property, was filed in Colorado. In 1945, the taxpayer learned of the Louisiana Community Property Tax Law. Thereupon, he filed an amended return for 1944 in Colorado, giving his home address as Baton Rouge, Louisiana.

The taxpayer sought employment with the Firestone Company and accepted employment with the Copolymer Corporation in order to gain experience in the rubber industry, to acquire a business background, and to establish his ability before participating in the management of the Gates Rubber Company. While the period he expected to remain in such employment was indefinite, he had a definite, fixed intention of ultimately returning to Denver and becoming associated with the Gates Rubber Company, when he had acquired, in his opinion, a sufficient business background so to do. He testified that he had always considered Denver as his permanent home and that when he went to Baton Rouge he intended to return to Denver after he had established himself in the rubber industry.

The Tax Court concluded that the taxpayer's domicile of origin was Evergreen,

Colorado, and that he did not abandon that domicile and establish a new domicile in Baton Rouge, Louisiana.

█ The findings of the Tax Court are conclusive on this court if they are supported by substantial evidence and are not clearly erroneous.[1]

█ The law assigns to every child at its birth a domicile of origin.[2] The domicile of origin which the law attributes to an individual is the domicile of his parents.[3] It continues until another domicile is lawfully acquired.[4]

Here, we think it clear under the facts that the domicile of origin of the taxpayer was his parents' home in Evergreen, Colorado.

█ In order to acquire a new domicile by choice, these essentials must concur: (1) Residence or bodily presence in a new locality, and (2) an intention there to remain.[5]

█ In order to acquire a domicile of choice, one must have a present intention of permanent or indefinite living in a given place or country, not for mere temporary and special purposes, but with a present intention of making it his home unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home.[6] If a person has actually removed from one place to another with an intention of remaining in the latter for an indefinite time and as a place of fixed present domicile, such latter place will be deemed his place of domicile, notwithstanding he may entertain a floating intention to return to his previous domicile at some future time.[7] However, an intention to return on the occurrence of some event which may reasonably be anticipated is not such an indeterminate or floating intention.[8]

Here, the taxpayer by his own testimony regarded Denver as his permanent home and he had a definite, present intention of returning to Denver, when he had acquired sufficient experience and background to qualify him, in his opinion, actively to participate in the management of the Gates Rubber Company. The event upon which his return was dependent was one he reasonably anticipated would occur and was not an indeterminate or floating intention.

█ We are of the opinion that the facts found by the Tax Court are supported by substantial evidence and not clearly er-

1. 26 U.S.C.A. § 1141(a); A & A Tool & Supply Co. v. Commissioner, 10 Cir., 182 F.2d 300, 302; Maytag v. Commissioner, 10 Cir., 187 F.2d 962, 964; Collamer v. Commissioner, 4 Cir., 185 F.2d 146, 147.

2. Reynolds v. Lloyd Cotton Mills, 177 N. C. 412, 99 S.E. 240, 241, 5 A.L.R. 284; In re Jones' Estate, 192 Iowa 78, 182 N.W. 227, 228, 16 A.L.R. 1286; Boyd's Ex'r. v. Commonwealth, 149 Ky. 764, 149 S.W. 1022, 1023, 42 L.R.A.,N.S., 580; Delaware Land & W. R. Co. v. Petrowsky, 2 Cir., 250 F. 554, 558.

3. In re Jones' Estate, 192 Iowa 78, 182 N.W. 227, 228, 16 A.L.R. 1286; McDowell v. Gould, 166 Ga. 670, 144 S.E. 206, 208; Delaware Land & W. R. Co. v. Petrowsky, 2 Cir., 250 F. 554, 558.

4. McDowell v. Gould, 166 Ga. 670, 144 S. E. 206, 208; Mid-Continent Pipe Line Co. v. Whiteley, 10 Cir., 116 F.2d 871, 873; Mitchell v. Delaware State Tax Com'r, 3 Terry 589, 42 A.2d 19, 22; In re Michelsohn's Will, 136 N.J.Eq. 387, 37

A.2d 118, 120; Kurilla v. Roth, 132 N.J. L. 213, 38 A.2d 862, 864.

5. Morris v. Gilmer, 129 U.S. 315, 328, 9 S.Ct. 289, 32 L.Ed. 690; Sun Printing and Publishing Ass'n v. Edwards, 194 U. S. 377, 383, 24 S.Ct. 696, 48 L.Ed. 1027; Mitchell v. United States, 88 U.S. 350, 353, 22 L.Ed. 584.

6. United States v. Knight, D.C.Mont., 291 F. 129, 133; Gilbert v. David, 235 U.S. 561, 569, 35 S.Ct. 164, 59 L.Ed. 360; Reynolds v. Lloyd Cotton Mills, 177 N.C. 412, 99 S.E. 240, 242, 5 A.L.R. 284.

7. Gilbert v. David, 235 U.S. 561, 569, 35 S.Ct. 164, 59 L.Ed. 360; Granite Trading Corp. v. Harris, 4 Cir., 80 F.2d 174, 176; Coca-Cola International Corp. v. New York Trust Co., 24 Del.Ch. 163, 8 A.2d 511, 524; Bragg v. Bragg, 32 Cal.App. 2d 611, 90 P.2d 329, 330.

8. Croop v. Walton, 199 Ind. 262, 157 N.E. 275, 278, 53 A.L.R. 1386; McDowell v. Friedman Bros. Shoe Co., 135 Mo.App. 276, 115 S.W. 1028, 1033; United States v. Knight, D.C.Mont., 291 F. 129, 133.

roneous, and fully warranted the conclusion that the taxpayer's domicile of origin continued and that he did not acquire a new domicile in Baton Rouge, Louisiana.

Affirmed.