Catherine E. SANIAL, as Administratrix of the goods, chattels and credits of Thomas G. Sanial, Deceased, Plaintiff,

v.

Anthony S. BOSSOREALE, Republic Aviation Corp., Joseph E. Woodward, and Zaidee B. Evans, as Administratrix of the Estate of Harold Evans, also known as Henry David Evans, Deceased, Defendants.

63 Civ. 586.

United States District Court
S. D. New York.
April 21, 1967.

Harry H. Lipsig, New York City, for plaintiff.

McCarthy & McGrath, New York City, for defendant (Bossoreale).

Fogarty & Schreiber, Brooklyn, N. Y., for defendant (Republic).

Perrell, Nielsen & Stephens, New York City, for defendant (Woodard).

Leahey & Johnson, New York City, for defendant (Evans).

MOTLEY, District Judge.

## MEMORANDUM OPINION ON MOTION TO DISMISS

All defendants in this action for personal injuries, pain and suffering, and wrongful death have moved to dismiss. The single ground of the motion is that, there being no diversity of citizenship between plaintiff and defendants, this court is without jurisdiction. This suit, brought by plaintiff as administratrix of the goods, chattels and credits of her deceased husband, is predicated wholly upon diversity jurisdiction. Title 28 U.S.C. § 1332. Defendants moved for a preliminary hearing of their motion pursuant to the provisions of Rule 12(d) Fed.R.Civ.P. The former motion was granted. A hearing was held on April 3 and 4, 1967.

As a result of that hearing, this court finds that plaintiff, who filed this action one month after she moved from New York to Maryland, was at the time of commencement of the action, a citizen of New York; that plaintiff moved to Maryland for a fixed, temporary period of time with the intention, at all times, of returning to New York at the end of that period; and that plaintiff never intended to abandon New York as her permanent domicile. It is not disputed that all defendants are citizens of New York. The fact that plaintiff was not a citizen of Maryland but a citizen of New York at the time this action was commenced means that there is lacking the requisite diversity of citizenship which

would give this court jurisdiction. The complaint must, therefore, be dismissed.[1]

The facts and the law upon which the foregoing findings and conclusions are based are set forth below.

Plaintiff and her deceased husband purchased a home in Setauket, Suffolk County, New York in 1958 or 1959. Plaintiff has voted every year in elections held in Suffolk County from 1958 through the last election held in 1966.

On December 12, 1961, plaintiff's husband was killed in his automobile in an accident involving other vehicles owned or operated by defendants. Plaintiff alleges in her complaint here that her husband's death was the result of the negligence of defendants in the operation of their vehicles.[2]

On February 12, 1962, plaintiff applied for a teaching position in the Setauket schools. On the same date, she wrote the supervising principal as follows:

My heartfelt thanks for your gracious interview. You have given me much encouragement.

I do believe my original decision about starting in 1963 is the correct one for me to make, and I hope you may have an opening for me at that time. I have given serious thought to your kind observation that it might be well for me to keep busy professionally—next year, but I feel that my obligation to my children is even more strongly defined now, and since it will be possible for me to remain with Mary for her last year at home, I should like to do so. I think my husband would want it this way.

In the meantime, perhaps any existing course requirements can be removed. My transcripts have been forwarded for re-evaluation as you suggested.

Again, I thank you for seeing me.

In the summer of 1962, plaintiff went to Europe for two months.

Thereafter, on December 7, 1962, plaintiff signed and returned, as directed, the original and one copy of a Notice of Salary sent her by the school clerk. This document notified plaintiff of what her salary would be for the school year 1963 to 1964. Subsequently, on December 10, 1962, the supervising principal notified plaintiff, by letter, that she was being recommended for appointment to the Setauket School staff, "at the salary indicated on the enclosed contract." Plaintiff was directed to sign both copies of the contract and return same to the Setauket School Board for its signature at the next Board meeting on January 3, 1963. By letter dated January 3, 1963, the supervising principal notified plaintiff that she had been hired by the Board for the 1963–1964 school year. Then, on January 19, 1963, the supervising principal, by letter, confirmed plaintiff's appointment by the Board for the school year beginning September 1963. He returned to plaintiff a duly executed copy of her contract.

On February 1, 1963, plaintiff moved from her home in Setauket, New York to Mount Rainier, Maryland. She was accompanied by her two minor children whose ages were 7 and 5. Plaintiff travelled in her car, which she drove, bearing a New York State license plate. She had applied for renewal of her New

---

1. A dismissal of this action does not mean that plaintiff is barred by the N.Y. Statute of Limitations from commencing suit now in the Supreme Court of Suffolk County. Plaintiff may commence a new action in the state court within s'x months of the dismissal of this action. New York Civil Practice Law and Rules § 205(a).

2. On June 15, 1962, plaintiff was appointed by the Surrogate's Court of Suffolk County as administratrix of the goods, chattels and credits of her intestate husband. Plaintiff was thereafter made a defendant in an unsuccessful suit brought by one of the defendants here against her as administratrix and some of the other defendants in the Supreme Court of Suffolk County. A judgment in that action, apparently commenced in 1963, awarded costs to plaintiff here on March 3, 1964 and recited that she "resides in East Setauket, New York."

York State driver's license and registration in January 1963, as required by law. Into her car plaintiff had put her clothing and the clothing of her children. The only other belongings plaintiff moved were some kitchen utensils and linens. On the day on which plaintiff moved, a lease, previously executed, became effective on plaintiff's house. The home was leased with all its furnishings except those removed as stated above. The lease was for a period of five months—February 1, 1963 to June 13, 1963.

Upon arriving in Mount Rainier, plaintiff moved into a previously leased furnished apartment as a month to month tenant; registered her children in the local schools; applied for a Maryland driver's license and car registration for which she received a Maryland State license plate; notified her automobile insurer of change of address; opened a checking account in a local bank and a charge account in a local branch of a New York department store; changed her New York Blue Cross-Blue Shield membership to membership in Maryland; and registered as a student at the Catholic University of America in Washington, D.C. At the university, plaintiff took three courses necessary to complete her New York State teacher certification requirements.

When plaintiff left for Maryland, she did not close or transfer her two New York savings accounts. She paid the gas, electric and telephone bills for these services at her Setauket home, all of which were continued unchanged in her deceased husband's name.

Plaintiff returned to her home in New York in June 1963 and began teaching in the Setauket School in September 1963.

In short, plaintiff never really gave up her domicile in New York. She merely established a temporary residence in Maryland. This temporary residence in Maryland was established for five months. This period coincided with the time during which plaintiff completed three courses at the Catholic University in Washington, D.C. and the period for which she leased her home. Plaintiff finally received New York teacher certification in October 1965 after taking additional courses during the summers of 1964 and 1965 at the same university.

Plaintiff testified that when she left New York on February 1, 1963, it was her intention to make Mount Rainier, Maryland her home, but the objective facts overwhelmingly establish an intention not to abandon her New York domicile.

One month (March 1, 1963) after plaintiff arrived in Maryland, this action was commenced. In her complaint, plaintiff alleged that she "resides at 2710 Webster Street, Mt. Rainier, Maryland." Plaintiff did not allege that she was a citizen of Maryland. She merely alleged that, "By reason of the * * * variance of residences" between plaintiff and defendants, all of whom, plaintiff alleged, reside in New York State or are doing business in New York, "there is a diversity of citizenship." Such allegations of residence are insufficient to show diversity of citizenship. Realty Holding Co. v. Donaldson, 268 U.S. 398, 45 S.Ct. 521, 69 L.Ed. 1014 (1925); Fisher v. United Airlines, 218 F.Supp. 223 (S.D.N.Y. 1963); Cowell v. Ducas, 2 F.Supp. 1 (S.D.N.Y.1932).

■ Title 28 U.S.C. § 1332(a) (1) provides that this court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interests and costs, and is between—(1) citizens of different States * * *."[3] For purposes of this jurisdictional statute, citizenship and domicile are synonymous, not citizenship and residence. Delaware, L. & W. R. Co. v. Petrowsky, 250 F. 554 (2nd Cir. 1918), cert. denied, 247 U.S. 508, 38 S.Ct. 427, 62 L.Ed. 1241 (1918); Spanos v. Skouras Theatres Corporation, 235 F.Supp. 1 (S.D.N.Y. 1964), aff'd, 364 F.2d 161 (2nd Cir. 1966), cert. denied, 385 U.S. 987, 87 S.

---

3. The complaint alleged the required jurisdictional amount.

Ct. 597, 17 L.Ed.2d 448 (1966); Fisher v. United Airlines, 218 F.Supp. 223 (S.D.N.Y.1963); Broadstone Realty Corporation v. Evans, 213 F.Supp. 261 (S.D.N.Y. 1962); Haymes v. Columbia Pictures Corp., 16 F.R.D. 118 (S.D.N.Y.1954).

Plaintiff established her domicile in Setauket with her husband in 1958 or 1959. Plaintiff, being *sui juris,* could make a bona fide change of domicile at any time. Stine v. Moore, 213 F.2d 446 (5th Cir. 1954). However, plaintiff could have only one domicile at a time and her New York domicile continued until a new one was shown to have been established. Desmare v. United States, 93 U.S. 605, 23 L.Ed. 959 (1877); Mitchell v. United States, 21 Wall. 350, 88 U.S. 350, 22 L.Ed. 584 (1875).

■ Plaintiff had the burden of proving that at the time this action was commenced her domicile was in Maryland. In order to meet this burden, plaintiff was required to prove that two facts coexisted: 1) she resided in Maryland, and 2) had the intention of remaining there for an indefinite period of time. Slaughter v. Toye Bros. Yellow Cab Co., 359 F.2d 954 (5th Cir. 1966); Janzen v. Goos, 302 F.2d 421 (8th Cir. 1962); Gates v. Commissioner of Internal Revenue, 199 F.2d 291 (10th Cir. 1952); Rivera v. Celebrezze, 248 F.Supp. 807 (D.Puerto Rico 1966).

Here plaintiff did establish a residence in Maryland. However, as the evidence discloses, she did not have the requisite intention of remaining there indefinitely. Her intention was plainly to establish a temporary residence in order to take required courses at The Catholic University of America.

> "In order to acquire a domicile of choice, one must have a present intention of permanent or indefinite living in a given place or country, not for mere temporary and special purposes, but with a present intention of making it his home unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home. If a person has actually removed from one place to another with an intention of remaining in the latter for an indefinite time and as a place of fixed present domicile, such latter place will be deemed his place of domicile, notwithstanding he may entertain a floating intention to return to his previous domicile at some future time. However, an intention to return on the occurrence of some event which may reasonably be anticipated is not such an indeterminate or floating intention." Gates, supra, 199 F.2d at 294.

Plaintiff's testimony regarding her intention was inconsistent with her whole course of conduct as established by the facts.

In State of Texas v. State of Florida, 306 U.S. 398, 425, 59 S.Ct. 563, 576, 83 L.Ed. 817 (1939) the Court ruled:

> "While one's statements may supply evidence of the intention requisite to establish domicile at a given place of residence, they cannot supply the fact of residence there; * * * and they are of slight weight when they conflict with the fact."

In District of Columbia v. Murphy, 314 U.S. 441, 456, 62 S.Ct. 303, 310, 86 L.Ed. 329 (1941) the Court said:

> "One's testimony with regard to his intention is of course to be given full and fair consideration, but is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts."

Accord: Walden v. Broce Constructing Co., 357 F.2d 242 (10th Cir. 1966).

In such circumstances, the plain facts as to the place of residence of plaintiff and her "real attitude and intention with respect to it as disclosed by" her "entire course of conduct" are the controlling factors in ascertaining her domicile. State of Texas v. State of Florida, supra, 306 U.S. at 425, 59 S.Ct. 563.

For all of the foregoing reasons, the motion to dismiss must be granted.