**Morris LEFKOWITZ, Plaintiff,**

v.

**Ralph LIDER et al., Defendants.**

**Civ. A. No. 76–2264–C.**

United States District Court,
D. Massachusetts.

Jan. 9, 1978.

James A. Murphy, Boston, Mass., for plaintiff.

Donald J. Fleming, Fleming & Brett, Mattapoisett, Mass., Ralph D. Lider, Lider & Lider, New Bedford, Mass., for defendants.

## OPINION

CAFFREY, Chief Judge.

This matter came before the Court on defendants' motion to dismiss plaintiff's two-count complaint.

Plaintiff Morris Lefkowitz is a self-styled businessman, inventor, and investor. For the last thirty years, plaintiff says he has been engaged in the textile, furniture, and carpet businesses as a domiciliary and resident of either New Bedford, or North Dartmouth, Massachusetts. Plaintiff claims ownership of at least fifty percent of the voting stock of three Massachusetts corporations. Defendant Bertha Lefkowitz is his wife. He alleges that she owns substantial, though not controlling, shares of the voting stock in two of the three corporations. Defendant Steven H. Lefkowitz is his son, and defendant Mark H. London is his son-in-law. Along with their wives, both Steven H. Lefkowitz and London own smaller, non-controlling shares of the voting stock of

two of the corporations. Defendant Ralph D. Lider is a lawyer who formerly represented plaintiff in his personal and business affairs. At some time subsequent to 1972, Attorney Lider served as a prosecuting attorney for the Commonwealth. Defendant Emile E. Morad is a lawyer who represented defendant Bertha Lefkowitz in a domestic relations dispute with plaintiff shortly before this lawsuit was instituted. Defendant Emily Peters is the bookkeeper for the three corporations formerly managed by the plaintiff.

Count 1 of plaintiff's complaint charges that defendants have conspired from at least December 5, 1972 through June 4, 1976: (1) to utilize Mass.Gen.Laws Ann. ch. 272, § 53 (West Supp.1977) as a device to secure the unlawful commitment of plaintiff to a facility of the Massachusetts Department of Mental Health; (2) to unlawfully seize plaintiff's property through guardianship or conservatorship proceedings in Bristol County Probate Court; and (3) to unlawfully apprehend plaintiff and injure his character through a series of arrests for allegedly disturbing the peace and through appearances before the Third District Court of Bristol County, all under color of Mass.Gen.Laws ch. 123, § 12(e) (West Supp.1977). Count 1 further alleges a deprivation of due process and of the assistance of counsel in connection with the Probate and District Court proceedings, in violation of the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution, as well as Articles Twelve and Twenty of Part 1 of the Massachusetts Constitution. As to relief, Count 1 seeks declarations of harassment, of the infringement of various constitutional rights, and of the existence of a constitutional tort. Plaintiff also seeks damages of $2,500,000 in addition to attorney's fees and costs. Count 2, while reiterating most of the allegations in Count 1, also charges that defendants further violated plaintiff's constitutional rights by covering up their conspiracy through the preparation and filing of false financial statements concerning one of plaintiff's businesses. Count 2 separately seeks $2,500,000 damages, as well as attorney's fees and costs.

Plaintiff invokes diversity jurisdiction, 28 U.S.C.A. § 1332, by claiming that he is a resident of New Hampshire while all defendants are residents of Massachusetts. Plaintiff also claims federal question jurisdiction, 28 U.S.C.A. § 1331, because of his allegations of violations of various Amendments to the United States Constitution and of 42 U.S.C.A. § 1983. Inexplicably, plaintiff does not claim jurisdiction under 28 U.S.C.A. § 1343(3). Plaintiff further seeks declaratory relief under 28 U.S.C.A. §§ 2201–02. Venue is properly laid under 28 U.S.C.A. § 1391(b).

All defendants move to dismiss on two grounds: (1) that the Court lacks diversity jurisdiction because the plaintiff, as well as all of the defendants, are citizens of Massachusetts; and (2) failure to state a claim upon which relief can be granted.

■ Although the Court has had difficulty identifying the precise nature of the substantive state tort action sought to be litigated on the basis of diversity jurisdiction, the instant case will be treated for purposes of this motion as more than a simple § 1983 claim. Though not denominated as such, defendants' challenge to diversity jurisdiction will be considered to be a motion under Fed.R.Civ.P. 12(b)(1) contesting subject matter jurisdiction. Unlike the practice under Fed.R.Civ.P. 12(b)(6), the facts that defendant Lider presents an extensive affidavit on plaintiff's state citizenship and that plaintiff relies on one of his answers to defendants' interrogatories and a photocopy of an affidavit filed in his state divorce action—all of which are outside of the pleadings—does not transform this first prong of the motion to dismiss into a motion for summary judgment. Fed.R.Civ.P. 12(b). Rather, the Court, pursuant to Fed.R.Civ.P. 43(e),[1] has accepted the proffered

---

1. Rule 43(e) provides:

    When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions.

affidavits and answer to interrogatories as evidence submitted on a motion, and, in addition, has held an evidentiary hearing on the factual issue of plaintiff's state citizenship as of the commencement of this action. *See e. g., Webb v. Nolan*, 361 F.Supp. 418, 419–20 (M.D.N.Car.1972); *Sanial v. Bossoreale*, 279 F.Supp. 940, 941 (S.D.N.Y.1967); 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 52.08, at 2738–39 (1977). *See also Brown v. Kingsport Publishing Corp.*, 321 F.Supp. 1352, 1353 (E.D.Tenn.1971).

■ It is well-settled law that in a case brought under the Court's diversity jurisdiction, no plaintiff can be a citizen of the same state as any of the parties-defendant. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Barker v. Lein*, 366 F.2d 757, 758 (1st Cir. 1966); *Charles Dowd Box Co. v. Fireman's Fund Ins. Co.*, 303 F.2d 57, 59 (1st Cir. 1962). Equally well established is the rule that the statute conferring diversity jurisdiction, 28 U.S.C.A. § 1332(a), is to be strictly construed. *E. g., Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942). The point in time for assessing the existence of diversity of citizenship is the date of the filing of the complaint. *Conolly v. Taylor*, 27 U.S. (2 Pet.) 556, 563, 7 L.Ed. 518 (1829); *Janzen v. Goos*, 302 F.2d 421, 424 (8th Cir. 1962). The fact that diversity of citizenship may be dissipated by a subsequent change of domicile does not defeat jurisdiction if the requisite citizenship was present when the lawsuit was instituted. *Television Reception Corp. v. Dunbar*, 426 F.2d 174, 177 (6th Cir. 1970); *Janzen v. Goos, supra* at 424.

■ Plaintiff's complaint alleges that he was a "resident" of New Hampshire on the critical date of June 8, 1976. A bare statement of residence or address only informs the Court as to where the plaintiff lives, not of which state he is a citizen and domiciliary. *E. g., John Birch Society v. National Broadcasting*, 377 F.2d 194, 199 (5th Cir. 1967). Thus, standing alone, an allegation that a party is a resident of a state is not a sufficient allegation of citizenship for purposes of 28 U.S.C.A. § 1332(a)(1) to survive a motion to dismiss. *E. g., Delome v. Union Barge Line Co.*, 444 F.2d 225, 233 (5th Cir. 1971); *Shriner v. Stong*, 229 F.Supp. 71, 72–73 (N.D.Ill.1964). But the Court, in its power to survey the whole record, *see, e. g., Sun Printing & Publishing Assn. v. Edwards*, 194 U.S. 377, 382, 24 S.Ct. 696, 48 L.Ed. 1027 (1904); *John Birch Society v. National Broadcasting Co., supra* at 199, believes that plaintiff's pleading defect is cured by his interrogatory answer that he was "domiciled" in New Hampshire.

■ Because there has been no adjudication of plaintiff's alleged incompetency or insanity, nor any proffer of evidence thereof, the Court presumes that Mr. Lefkowitz was *sui juris* on June 8, 1976, and thus capable of effecting a bona fide change of domicile at an earlier date. *See Janzen v. Goos, supra* at 424–25. Since defendants have challenged plaintiff's allegation of domicile, the burden of proving the jurisdictional fact of a diversity of citizenship now rests with plaintiff, and must be proven by a preponderance of the evidence. *E. g., Thomson v. Gaskill, supra* 315 U.S. at 446, 62 S.Ct. 673. The Court will treat the issue of plaintiff's citizenship as one of fact and make a finding as to whether plaintiff has proven New Hampshire domicile by a preponderance of the evidence. *Janzen v. Goos, supra* at 423–24; *Travis Mills Corp. v. Square D. Co.*, 67 F.R.D. 22, 25 (E.D.Pa. 1975); 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 52.08, at 2738–39 (1977). The controlling standard for determining the acquisition of citizenship in a new state has often been articulated by the Supreme Court:

[T]o effect a change of one's legal domicil, two things are indispensable: First, residence in a new domicil; and, second, the intention to remain there. The change cannot be made, except *facto et animo.* Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long

continued, cannot work the change. *Mitchell v. United States*, 21 Wall. 350 [22 L.Ed. 584].

*Sun Printing & Publishing Assn. v. Edwards, supra* 194 U.S. at 383, 24 S.Ct. at 698.

Having considered the entire official file, and the oral and documentary evidence introduced at the hearing, I make the following findings of fact. Plaintiff has lived and managed his various businesses in New Bedford since the end of World War II. Plaintiff alleges that as of June 8, 1976, the date of the complaint, he was a former subject of the Commonwealth of Massachusetts who now "resides" in Rockingham County, New Hampshire, where he had taken sanctuary from defendants' alleged unconstitutional harassment. In a photocopy of an affidavit dated August 18, 1977 and filed in Bristol County Probate Court, plaintiff claimed that he fled to New Hampshire on June 4, 1976—the date of an Internal Revenue Service audit of his business and 4 days before the filing of the instant complaint—when his wife unsuccessfully attempted to label him as mentally incompetent or dangerous to others or himself. Plaintiff also was arrested on June 4 for disturbing the peace and appeared on that charge in the Third District Court of Bristol County. Plaintiff contends that he then assumed New Hampshire citizenship, not to insure federal jurisdiction or to evade a possible Massachusetts domestic support order, but to safeguard his physical freedom and well-being. In his interrogatory answer dated November 26, 1976, plaintiff declares that he is "domiciled" and registered to vote in Rockingham County, New Hampshire. But plaintiff admits in that document that in 1976 he lived in Massachusetts, New Hampshire, Texas, and Florida, and conceded that as of the next day, November 27, 1976, he planned "to again live" at his home in New Bedford. Thus, the interrogatory answer suggests that plaintiff's stay in New Hampshire extended only from June 4, 1976 through November 26, 1976.

At the evidentiary hearing, however, plaintiff testified that his period of New Hampshire citizenship extended from April, 1976 to April, 1977, and that he returned to his New Bedford address on the latter date. During that time, plaintiff lived in various New Hampshire motels and spent three to four months at a house, owned by his counsel's wife, that was located in Epping, New Hampshire, his new place of voting. Plaintiff made frequent visits to Massachusetts to consult with his attorney and to deposit and withdraw money from his various New Bedford checking accounts. Aside from his voter registration, the only other evidence of an intent to remain in New Hampshire for the indefinite future was plaintiff's desire to move his Massachusetts textile business to New Hampshire, and to that end, he made a preliminary investigation of industrial floor space and the potential labor market. Yet plaintiff's financial precariousness and the confused status of his New Bedford business indicate that the likelihood of a New Hampshire business venture was at best a remote one, and, in fact, it never materialized.

Plaintiff also testified that he always "had a hope of coming back to Massachusetts" when the harassment ceased. Moreover, plaintiff gave his New Bedford address as his legal residence on at least three occasions during the alleged period of New Hampshire domicile: (1) in September, 1976, when he was issued a parking ticket in Salisbury, Massachusetts against his Massachusetts driver's license, which license he still retains; (2) in December, 1976, when he filed a complaint to commence Massachusetts state-court litigation; and (3) in March, 1977, at an *in forma pauperis* hearing in state court. As recited in the affidavit of defendant Lider, plaintiff continued to use the New Bedford address as his mailing address and to draw on checking accounts in New Bedford banks. Perhaps most significantly, plaintiff admitted that he left Massachusetts only upon the advice of counsel and only to "escape" harassment.

In sum, I am convinced and find that while Morris Lefkowitz was living in New Hampshire on June 8, 1976, he had neither an intention to remain in that state indefinitely nor an intention to relinquish his New Bedford domicile as his home. In so finding, I particularly have in mind the facts that Mr. Lefkowitz's stay in New Hampshire lasted five and one-half months, that the instant action was filed four days after the alleged change of domicile, that he never changed his mailing address or bank accounts to reflect a new domicile, that he continued to give his New Bedford address as his legal address, that he never acquired a permanent New Hampshire address, and that his departure from Massachusetts was a course of action urged by his counsel, and not a decision arrived at freely and independently by plaintiff. *See Webb v. Nolan, supra* at 420; *Sanial v. Bossoreale, supra* at 940–44. The countervailing facts that plaintiff has registered to vote in New Hampshire and that he says he entertained vague plans to start a business there are not sufficient evidence of an intention to live indefinitely at the claimed domicile, especially in the absence of other concrete actions demonstrating his intention to effect a *bona fide* change of domicile.

Therefore, I find that plaintiff was a resident and citizen of Massachusetts on June 8, 1976, and, accordingly, rule that § 1332(a)(1) jurisdiction is absent for lack of diversity of citizenship between plaintiff and defendants.

Defendants' ground for challenging federal question jurisdiction, 28 U.S.C.A. § 1331, is that plaintiff has failed to state a claim under 42 U.S.C.A. § 1983 because, as private persons during the period of the alleged deprivation of constitutional rights, these defendants could not have satisfied the statutory element of action under color of state law. Plaintiff offers this rebuttal: (1) that although defendants Bertha Lefkowitz, Steven Lefkowitz, London, Morad, and Peters are not public officials, their use of the Bristol County Probate and Third District Courts under the authority of Mass. Gen.Laws ch. 123, § 12(e); ch. 272, § 53 (West Supp.1977) constitutes action under color of state law; and (2) that defendant Lider, at some time since December 5, 1972, has acted as a prosecuting attorney for the Commonwealth of Massachusetts. Defendants' motion will be considered as one made pursuant to Fed.R.Civ.P. 12(b)(6).

Plaintiff has adequately alleged a deprivation of civil rights by charging unlawful arrest, detention, and seizure of his property. Those allegations confer jurisdiction upon the Court under 28 U.S.C.A. § 1343(3) and enable it to decide the viability of plaintiff's § 1983 claim. *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Kerrigan v. Boucher*, 326 F.Supp. 647, 649 (D.Conn.1971). The standard used to assess alleged facts on a motion to dismiss is a familiar one: the material facts alleged in the complaint are to be construed in the light most favorable to plaintiff and taken as admitted, with dismissal ordered only if plaintiff is not entitled to relief under any set of facts he could prove. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir. 1976); *Needleman v. Bohlen*, 386 F.Supp. 741, 744 (D.Mass. 1974).

It is undisputed that defendants Bertha Lefkowitz, Steven Lefkowitz, London, Morad, and Peters are private citizens. Section 1983 safeguards constitutional rights only from infringement by persons acting under color of state or local authority; an allegation of constitutional violations arising from the acts of private citizens, however willful and malicious, does not state a cognizable § 1983 claim. *E. g., Spampinato v. M. Breger & Co.*, 270 F.2d 46, 48–49 (2d Cir. 1959), *cert. denied*, 361 U.S. 944, 80 S.Ct. 409, 4 L.Ed.2d 363 (1960) (*inter alia*, psychiatrist who acted as private citizen in committing plaintiff to mental institution did not act under color of state law); *Schetter v. Heim*, 300 F.Supp. 1070, 1074 (E.D.Wis.1969) (plaintiff's wife and a co-defendant acted in their individual capacities, and not under color of state law, in

**358**

obtaining a court order arresting and detaining plaintiff on the grounds that he was incompetent and dangerous, and in securing his subsequent release). Unlike *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976), there are no allegations here of a conspiracy between some arresting police officer defendants and these private party defendants sufficient to constitute state action. Nor does defendants' resort to the judicial process and to the authority of the Commonwealth's statutes transform these private individuals into state agents. *See Slotnick v. Goldstein*, 566 F.2d 1167 (1st Cir. 1977) ("[e]ngaging in private litigation does not cause an attorney to become a state actor"); *Glasspoole v. Albertson*, 491 F.2d 1090, 1091 (8th Cir. 1974) (plaintiff's wife and her divorce attorney did not act under color of state law in seeking judicial relief from plaintiff's delinquency). To hold otherwise would obliterate the concept of state action and deter citizens from availing themselves of the courts and the general laws of Massachusetts. Thus, even under the liberal reading to which civil rights plaintiffs are entitled, *Needleman v. Bohlen, supra* at 747, I conclude that this complaint fails to state a § 1983 cause of action because I am convinced to a legal certainty that plaintiff can not prove that any of these defendants acted under color of state or local law, even assuming an actual deprivation of constitutional rights.

█ Because plaintiff's § 1983 allegations against these five defendants fail for lack of activity by the state or its agents acting under color of its law, then all of plaintiff's inartfully-alleged independent constitutional claims likewise must suffer the same fate for the same lack of state action. *E. g., Clark v. Universal Builders, Inc.*, 409 F.Supp. 1274, 1279 (N.D.Ill.1976).

█ Turning to another aspect of plaintiff's § 1983 complaint, it is true that he alleges that defendant Lider served as a prosecuting attorney for some period of time after 1972. In *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court extended absolute immunity to state prosecutors sued for

money damages under § 1983 because of conduct allegedly constituting deprivation of a plaintiff's civil and constitutional rights. There are no allegations in the instant complaint of any acts of defendant Lider going beyond the scope of his duties as a state attorney-prosecutor, and I rule that no cause of action is stated against Attorney Lider by plaintiff's complaint, having in mind the absolute immunity doctrine of *Imbler v. Pachtman, supra.*

█ Plaintiff's view of the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201–02, as an independent jurisdictional source is mistaken, and absent another jurisdictional base, the added remedy of declaratory relief cannot be granted. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Delavigne v. Delavigne*, 530 F.2d 598, 601 (4th Cir. 1976); *Wells v. United States*, 280 F.2d 275, 277 (9th Cir. 1960).

Accordingly, plaintiff's action is dismissed for lack of diversity jurisdiction and failure to state a claim under 42 U.S.C.A. § 1983 against any of the defendants.