George S. DAVIS et al.,
Plaintiffs-Appellants,

v.

Moses RICHMOND et al.,
Defendants-Appellees.

No. 74–1338.

United States Court of Appeals,
First Circuit.

Argued Jan. 7, 1975.

Decided March 11, 1975.

Sam Stonefield, Springfield, Mass., for appellant.

Edward T. Dangel, III, with whom Dangel & Smith, Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiff, George Davis, brought this action under 42 U.S.C. § 1983 against a former landlord asserting that distraint of his personal effects under the Massachusetts Boardinghouse Lien Statute, Mass.G.L. c. 255, § 23, violated the due process clause of the fourteenth amendment. Section 23 gives boardinghouse and lodging-house keepers a possessory lien, on guests' baggage and effects

brought to the house, for all charges due for fare and board or lodging. The statute is understood as allowing the lienor without court order to take and maintain possession of the lodger's property while charges are outstanding. Other statutory provisions allow him to sell the property and apply the proceeds to the debt after notice and judicial hearing. M.G.L. c. 255, §§ 26–29. The tenant may obtain release of the property by filing a bond. *Id.*, §§ 32, 33.

Plaintiff alleged that while living in defendants' Springfield boardinghouse in 1973 he was hospitalized as the result of being attacked and beaten. When later he tried to remove his personal property including clothing from the boardinghouse, he was refused on the ground that he was in arrears in his rent.[1] Plaintiff alleged that he could not afford to buy other clothes and could not meet appointments for needed medical treatment. His health was allegedly damaged as a result.

Holding that the alleged conduct did not constitute state action, the district court allowed defendants' motion to dismiss for failure to state a claim. We affirm the dismissal on the same ground.

Defendants' distraint of plaintiffs' property, whether or not justified, would not violate the fourteenth amendment so long as it amounted at most to an "[i]ndividual invasion of individual rights". Civil Rights Cases, 109 U.S. 3, 11, 3 S.Ct. 18, 27 L.Ed. 835 (1883). For the Constitution and for 42 U.S.C.

§ 1983[2] to come into play, plaintiff's injury must be caused significantly by action of the state of Massachusetts or its instrumentalities. Plaintiff, recognizing this requirement, quotes Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 173, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972), that "where the impetus for the discrimination is private, the State must have 'significantly involved itself . . .' in order for the discriminatory action to fall within the ambit of the constitutional prohibition". Although no state machinery or official was involved in the distraint here,[3] plaintiff would have us find significant state involvement from the following factors: authority to withhold plaintiff's effects was conferred by a Massachusetts statute which, when enacted in 1859, legalized otherwise illegal conduct; the lien law reflects a state policy favoring landlords; and the distraining of private propery is the sort of action normally entrusted to a state rather than to private persons.

While plaintiff argues his case cogently, and while we are aware that the able Chief Justice of the Boston Housing Court has recently held the same lien statute to be unconstitutional, Porter v. Fleischhacker, No. 00538 Eq. (Boston Housing Ct. Jan. 15, 1975), we are not persuaded. Like the district court we hold that the boardinghouse lien statute fits logically within the same category as the Rhode Island banker's lien considered in Fletcher v. Rhode Island Hospital Trust Nat'l Bank, 496 F.2d 927 (1st Cir. 1974). *Cf.* Shirley v. State Nat'l

---

1. Under M.G.L. c. 140, § 12 it would be illegal for plaintiff to have removed his effects if they were subject to a valid lien. M.G.L. c. 255, §§ 32, 33, and 36 allow him to seek recovery judicially.

2. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 U.S.C. § 1983.

3. *See* Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1967); United States v. Price, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). Relevant Supreme Court cases to date finding state action have dealt with prejudgment seizures invoking state process. In *Fuentes, supra,* 407 U.S. at 79 n. 12, 92 S.Ct. at 1993, the Court seemingly acknowledged an absence of state action when a creditor proceeds, as here, "without the use of state power, through self-help, by 'distraining' the property before a judgment".

Bank, 493 F.2d 739 (2d Cir. 1974); Adams v. Southern Cal. First Nat'l Bank, 492 F.2d 324 (9th Cir. 1973) (finding no state action in the authorization of pre-judgment repossessions by private individuals having a contractual security interest in the property under the Uniform Commercial Code); Bichel Optical Lab., Inc. v. Marquette Nat'l Bank, 487 F.2d 906 (8th Cir. 1973). As in *Fletcher*, the lien attaches to property within a creditor's ready grasp under circumstances where self-help seems, an obvious and not surprising course. The fact that defendants' conduct was permitted and regulated by state law—as much private conduct is—does not by itself make the conduct's connection with the state sufficiently close so that the private conduct "may be fairly treated as that of the State itself." Jackson v. Metropolitan Edison Co., 419 U.S. 345, at 349, 95 S.Ct. 449, at 453, 42 L.Ed.2d 477; (1974), Moose Lodge, *supra*, 407 U.S. at 176–77, 92 S.Ct. 1965.

It is true that the Rhode Island banker's lien considered in *Fletcher* was not a creature of statute and was anchored in legal tradition. Here plaintiff argues that authority for a boardinghouse lien, as distinct from an innkeeper's lien, comes not from the common law but from adoption by the Massachusetts legislature in 1859 of the forerunner to the present statute. At common law an innkeeper could distrain his guests' belongings, but this right arose in the context of a legal relationship entailing special obligations and liabilities. A boarding-house keeper apparently had no such specific legal right (although it is questionable how much light is shed on relations between a modern boardinghouse keeper and his tenants by reference to one aspect of the law in a society whose other aspects included debtors' prisons and, for most crimes, the gallows). In any event we are disinclined to decide the issue of state involvement on the basis of whether a particular class of creditor did or did not enjoy the same freedom to act in Elizabethan or Georgian England. The statute at issue is a fairly unremarkable product of the continuing legislative function to define creditors' rights. See *Fletcher*, *supra*, 496 F.2d at 930. If it goes beyond the common law, it does so merely by broadening the class (innkeepers) having traditional right to a possessory lien. And even this modest change occurred 115 years ago. It is true that a number of courts have analyzed the state action question in part upon whether the challenged law codified the common law or created new rights. See, e.g., Shirley v. State Nat'l Bank, *supra*; Adams v. Southern Cal. First Nat'l Bank, *supra*; Boland v. Essex County Bank & Trust Co., 361 F.Supp. 917, 919 (D.Mass.1973). But no finding of state action by the Supreme Court has been called to our attention based solely on the act of repeal of a statute or prior decisional law.[4] As has been stated in one comment,

---

4. In Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967), the Court found state action in California's constitutional amendment providing that the state could not limit a person's right to sell or rent real property to whomever he chooses. In addition to repealing state anti-discrimination laws, the amendment precluded all state agencies from acting to prohibit racial discrimination in housing in the absence of another constitutional amendment. The effect was to create a barrier to minorities' use of the ordinary political process to obtain their goal of fair housing. See Black, Foreword: "State Action," Equal Protection, and California's Proposition 14, 81 Harv.L.Rev. 69, 81 (1967). In contrast to Massachusetts' enactment of the Boardinghouse Lien Act, Califor-nia's amendment thus did far more than allow challenged private conduct. See *Reitman*, *supra* at 376–77, 87 S.Ct. 1627.

In Railway Employees' Dept. v. Hanson, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), the Court did not face the issue of whether an act rendered private conduct governmental action, but rather whether a federal act, which invalidated certain state right-to-work laws, was a valid exercise of congressional power under the Commerce Clause. The act was only permissive and did not require union-shop agreements, but it nevertheless constituted federal governmental action to which the first and fifth amendments applied. The Court reasoned that although a private agreement was necessary to invoke

"The focus for state action purposes should always be on the impact of the law upon private ordering, not the law's age or historical underpinnings. Unless the law in some fashion significantly interferes with the private ordering, the challenged conduct should not be attributed to the state. To make state action turn upon whether the statutory right being asserted has common law origins would lead to anomalous results. The identical private conduct, pursuant to the identical state statutory or judicial law, would be state action in some states while not in others depending solely upon the fortuitous and unimportant circumstance of the age and history of the law."

Burke & Reber, State Action, Congressional Power and Creditors' Rights: An Essay on the Fourteenth Amendment, 47 S.Cal.L.Rev. 1, 47 (1973), *quoted in* Shirley v. State Nat'l Bank, *supra* (Kaufman, C. J., dissenting).

Plaintiff stresses the "illegality" in bygone days of the landlord's present action. But if the state is to regulate property rights, it stands to reason that what was illegal, i.e., a trespass or conversion, under one set of rules may cease to be so under another. Merely because a state "legalizes" something does not necessarily signal that the state itself has become a participant. The situation existing between landlord and tenant when the latter defaults on his rent and leaves his effects on the premises invites the state to establish rules governing the parties' rights. Both antagonists might seem to have claims on the property. By granting the unpaid landlord a defeasible possessory right,[5] the state merely adopts one possible resolution, acting not as participant but rulemaker. If the version here adopted was pro-landlord,

other possible alternatives would be pro-tenant. We are thus not impressed by plaintiff's characterization of the state as actively "encouraging" distraint, because in an incidental sense all state regulation would inevitably strike a balance of some kind between the competing interests. Whatever that balance, the state is merely discharging its normal function of clarifying rights in a gray area where a failure to do so would leave the outcome to a private test of strength. The "impetus" for any given distraint remains wholly private. Only if we were to infer state involvement from the mere existence of state regulatory legislation could we accept plaintiff's position.

Plaintiff also relies on the characterization of the distraint as a "public function". But there is no state support of nominally private conduct, nor any symbiotic relationship or joint activity. *See, e.g.*, Burton v. Wilmington Parking Auth., 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Nor is a boardinghouse the functional equivalent of public property. *Compare* Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), *and* Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), *with* Lloyd Corp. v. Tanner, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972).

Plaintiff's "public function" argument boils down to an assertion that it is inherently a governmental responsibility to resolve disputes before permitting any deprivation of property. But as already suggested, in either a state of nature or an organized society without an applicable law, a boardinghouse keeper might reasonably assert the right to hold a guest's property within the premises un-

---

the federal law, it expressly superseded and barred inconsistent laws of states prohibiting the union shop and as such was a "necessary part of every union shop contract" in those states. *Id.* at 231–32, 76 S.Ct. at 718. The act, by barring inconsistent state laws, did more than merely repeal state law.

**5.** The statute merely gives an initial possessory advantage to the boardinghouse keeper (as opposed to leaving the tenant with the unfettered right to make off with the property). The state has not authorized a summary private sale which would end the possibility of eventual repossession by the lodger.

til the rent is paid.[6] A keeper does not need assistance from the state to take and hold property within the premises: self-help is readily available. We said in *Fletcher, supra*, 496 F.2d at 930,

"Whatever the truth of the old saw that possession is nine-tenths of the law, a creditor who holds something of value to his debtor is differently situated from one who does not: he does not need the state to facilitate his collection efforts."

Since the execution of a lien by a sheriff or constable would constitute state action, plaintiff contends that it is merely formalistic to find no state action when a private individual performs a functionally similar act under the shield of a statutory scheme. *See* Hall v. Garson, 430 F.2d 430, 439–40 (5th Cir. 1970). It is true the effect on the person deprived of property may be the same, but reliance on this fact rather than on the extent of state involvement would rob the state action requirement of any meaning. State involvement may indeed exist if the state delegates its powers or functions to private individuals or groups who act as agents of the state. *See, e.g.,* Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953). But there has been no such delegation of power here. Rather, the Massachusetts legislature has made the seizing and holding of property a matter of a private creditor invoking a private remedy. Such self-help is inherently private, and we can find no significant state involvement in the legislature's choice of a point at which to draw the line between permissible individual conduct and the necessity for state intervention.

Because we find no state action, we do not consider whether the prejudgment seizure without notice and opportunity for an adversarial hearing violated the requirements of due process of law in view of the remedial action available to the lodger under Massachusetts law. *See* North Ga. Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1967).

Affirmed.

6. Remedies are available under state law to a lodger who, as here, asserts that the property was seized and held even though no rent was due. *See* M.G.L. c. 247, § 13; c. 255, §§ 36, 39.