**Patrick CATRONE, Plaintiff,**

v.

**MASSACHUSETTS STATE RACING COMMISSION et al., Defendants.**

**Civ. A. No. 75–900–C.**

United States District Court,
D. Massachusetts.

Dec. 5, 1975.

George E. Donovan, Herbert D. Lewis, Lewis & Lewis, Boston, Mass., for plaintiff.

Terence P. O'Malley, Asst. Atty. Gen., and Roger P. Stokey, Goodwin, Procter & Hoar, Boston, Mass., for defendants.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action for alleged violation of civil rights, in which jurisdiction of this court is invoked under 28 U.S.C. A. § 1343(3) and 42 U.S.C.A. § 1983. Plaintiff is a resident of Massachusetts and a professional horse trainer. Defendants are the Massachusetts Racing Commission, the individual members thereof, and Ogden Suffolk Downs, Inc., the owner and operator of the Suffolk Downs Race Track in Revere, Massachusetts. The matter came before the Court on plaintiff's application for a mandatory injunction which, if granted, would require Suffolk Downs to admit plaintiff to its premises and to allow him to obtain stable space there, train horses, and enter horses trained by him in races at Suffolk Downs. After hearing I find and rule as follows:

Plaintiff, who is in his mid-40's, has been employed in various capacities at horse race tracks since he was approximately 14 years of age. He has no training or experience in any other type of employment and his only other income comes from his uncertain winnings as a gambler. He was indicted in this court on February 13, 1975 on a two-count indictment. The first count charged conspiracy to violate 18 U.S.C. § 2314. The second count charged violation of 18 U.S.C. § 2314, i. e., causing the transportation in interstate commerce of a falsely made Jockey Club foal certificate for a race horse.

On February 3, 1975, prior to the return of the indictment, plaintiff was ejected from Suffolk Downs at the direction of Leonard M. Frisoli, Director of Security for the track, because of an incident in which plaintiff became involved with a security guard employed there. The stewards at Suffolk Downs then indefinitely suspended plaintiff from use of the track. On March 1, 1975 the State Racing Commission held a hearing to determine whether plaintiff's suspension should continue because of the February 3 incident. On March 18, the Commission reversed and vacated the ruling of the stewards, fined plaintiff $50.00 and ordered his reinstatement. Suffolk Downs has refused to honor the ruling of the Commission and is presently still excluding plaintiff from its premises. On March 27, the State Racing Commission held a hearing after which it suspended plaintiff's owner-trainer license pending the outcome of the criminal case. Two days after a jury verdict of not guilty was returned, the State Racing Commission reinstated plaintiff's license.

It first should be noted that the State Racing Commission's reinstatement of plaintiff has mooted this case as to the Commission and its individual members, and accordingly the motion for dismissal filed on behalf of the Commission and its members should be allowed.

Plaintiff contends herein that his continued exclusion from Suffolk Downs constitutes a denial of his civil rights, particularly his right to due process of the law, and his right to equal protection of the law. Plaintiff further contends that Suffolk's persistence in excluding him from racing is tantamount to a national prohibition against his racing or training horses anywhere in North America, because of an unwritten reciprocal agreement between all of the race tracks in North America.

■ To establish that this Court has jurisdiction to entertain a claim under 42 U.S.C.A. § 1983, plaintiff must establish that the conduct of the officials at Suffolk Downs constitutes action "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, . . ." An examination of the entire Massachusetts legislative scheme for regulating and licensing the operation of race tracks within the Commonwealth indicates that that legislative scheme is of such a nature as to make the conduct of defendant Suffolk Downs "state action" for purposes of § 1983.

Among the factors which persuade this Court that state action is involved herein is the provision of Mass. G.L. c. 128A, sec. 10A, which delegates to the operators of state-licensed race tracks the authority to exclude, temporarily or permanently, from their tracks anyone determined by them to be a person "whose presence on said premises is detrimental, in the sole judgment of said licensee, to the proper and orderly conduct of a racing meeting." c. 128A of the General Laws, as inserted by c. 374 of the Acts of 1934, creates the Massachusetts State Racing Commission and authorizes the Commission to prescribe rules, regulations and conditions under which all horse races shall be conducted in the Commonwealth. Rule 113 of the State Racing Commission Rules requires that when the stewards of a race track deny privileges of the track to any person, "The Stewards shall, in every case, report their action to the Commission which may exclude such person either temporarily or permanently from all race meetings under its jurisdiction." Rule 54 of the State Racing Commission Rules provides: "A final appeal in the case of any person penalized or disciplined by the racing officials of a meeting licensed by the Commission, may be taken to the Commission." Rule 55 states: "Such an appeal must be filed in writing at the office of the Commission within ten days of the date of said penalty or imposition of said discipline." Rule 236 provides: "Owners, trainers and stable employees shall abide by said Laws and Rules and accept the decision of the Stewards on any and all questions to which their authority extends, subject

to their right of appeal to the Commission."

There was evidence at the hearing that there are three stewards assigned to Suffolk Downs, two of whom are employees of the track whose salaries are paid directly by Suffolk Downs. The third steward is an employee of the State Racing Commission whose position is described in Rule 496 of the State Racing Commission Rules as follows: "One of the stewards shall be appointed by the Commission. The compensation to be paid to the Steward appointed by the Commission shall be paid by the licensee."

The foregoing amounts to a legislative establishment of a system whereby certain powers, including exclusion, are given to the operator of a race track acting through a three-man board of stewards, two of whom are employees of the track. The exercise of these powers is directly appealable to a state agency which can affirm, vacate, or modify the way in which the private entity initially exercised these powers. This is tantamount to making the private entity a court of first resort as to the propriety of the conduct of the individual in question, and the State Racing Commission an appellate court to review the correctness of the original decision. Accordingly, I rule that on the record before me plaintiff has established that the conduct of Suffolk Downs is state action for purposes of § 1983 and this case.

I further rule that on the record before me this case is clearly distinguishable from such cases as *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), and *Davis v. Richmond*, 512 F.2d 201 (1 Cir. 1975). For example, *Moose Lodge* involved the operation of a privately conducted Club, admission to which was concededly limited to members of the Lodge. In contrast, Suffolk Downs is a public facility which spends substantial sums trying to attract attendance by the public at large, using the media of radio, television and newspapers. The facts in the *Davis* case, involving as it did a landlord's use of the power to distrain personal property of a tenant who was in arrears on his rent, are also clearly distinguishable.

The question of granting injunctive relief has been the subject matter of two hearings before this Court. At neither of the hearings did Suffolk Downs produce evidence adequate to justify its exclusion of plaintiff, which exclusion amounts to a permanent ban on plaintiff's opportunity to earn his livelihood in the only trade he knows.

I find on the basis of the testimony of the witnesses Frisoli and Hicks that security is a matter of great importance in the operation of a race track and that the management of Suffolk Downs places great weight on the security-related opinions of Leonard Frisoli, a former FBI agent who is Director of Security at Suffolk. Mr. Frisoli had occasion to investigate plaintiff during the course of his service with the FBI as far back as 1962, and he had then and has now a very negative opinion of Mr. Catrone. Mr. Frisoli is aware of two incidents at Suffolk Downs involving plaintiff, one of which consisted of plaintiff's allowing an unauthorized person to use plaintiff's identification sticker to enter a restricted stall area, and the other of which involved an altercation with a security guard over plaintiff's driving on a restricted road at the track.

I find that because of these incidents, plus Mr. Frisoli's negative opinion premised on whatever he learned about plaintiff while serving as an FBI agent, Mr. Frisoli decided that plaintiff should be barred from Suffolk Downs. Whether or not the fact of the indictment in this court entered into that decision is not clear on the record. I find that Mr. Frisoli made a recommendation to the management of Suffolk Downs that plaintiff be barred.

More importantly, although not expressly admitted by the witness Hicks, I find that the management in turn advised the two stewards employed by the track of its desire to get rid of the plaintiff. I further find that the two

stewards who receive their pay from Suffolk Downs know where their bread is buttered. Mr. Hicks conceded that he knew of no similar permanent exclusion of anyone connected with racing in the thirty years that he has been connected with racing. He made the significant admission that he is the state steward at Rockingham and that he had a conversation with plaintiff there after the not guilty jury verdict, at which time plaintiff told him that he wished to reapply for admission to Rockingham. Mr. Hicks testified that he told plaintiff that there was nothing he (Hicks) could do at Rockingham because the management there did not want him back. I draw the inference that the stewards at Suffolk Downs are just as controlled by management as Mr. Hicks' testimony indicates is true of the stewards at Rockingham. This finding is further supported by Mr. Hicks' admission that he "has to respect security," i. e., do what the security officer wants done. He testified that the stewards make their own determination (which I disbelieve), but then added "We have no choice but to rely on security, we would like to uphold our security if we can." Asked what had happened between January 1975 and the date of the hearing, to cause such a radical change of opinion as to plaintiff's integrity, Mr. Hicks supplied no satisfactory answer. It was also adduced at the hearing that a number of trainers under indictment have continued to enjoy racing privileges at Suffolk Downs, as have other trainers who have been convicted of a variety of criminal offenses.

The Secretary of the State Racing Commission testified that since July 25, 1975 plaintiff has been and is an owner-trainer in good standing in the Commonwealth of Massachusetts.

 Accordingly, I find and rule that plaintiff has shown that he is presently being excluded from Suffolk Downs on the basis of conduct which is arbitrary and capricious. Assuming that the state can legally delegate the sweeping powers contained in Section 10A to a private corporation, those powers may not be exercised arbitrarily and capriciously. *Muhammad Ali v. Division of State Athletic Com'n. N. Y.*, 316 F.Supp. 1246, 1250 (S.D.N.Y.1970).

Plaintiff has made out a case for deprivation of equal protection of the laws by Suffolk Downs, which has refused to allow him to race, at least in part because of his indictment, while it has continued to allow other persons to operate as trainers who are under indictment and who have been convicted of a variety of crimes. Suffolk Downs has adduced nothing to justify this unevenhanded treatment of plaintiff as compared to others in the group of trainers who have had difficulties with the criminal law.

In addition to his equal protection claim, plaintiff has alleged that the conduct of Suffolk Downs deprived him of due process of law. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, the Supreme Court observed (at 573, 92 S.Ct. at 2707):

"There might be cases in which a State refused to re-employ a person under such circumstances that interests in liberty would be implicated. But this is not such a case.

The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. . . . In the present case, however, there is no suggestion whatever that the respondent's 'good name, reputation, honor, or integrity' is at stake.

Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. . . . Had it done so, this, again, would be a different case."

 I rule that the above-quoted language from *Roth* establishes that the conduct of Suffolk Downs herein constitutes a denial of plaintiff's "liberty." His exclusion from the track was a stigma which effectively forecloses plaintiff from acting as a trainer at any horse racetrack in North America.

 This ruling raises the question of what process must be accorded to plaintiff before he may be legally deprived of his liberty·by "state action" of the type involved. It has long been established that at a very minimum the due process clause requires that a person whose liberty or property are at stake be accorded a fair hearing after reasonable notice. On the state of this record I rule that Suffolk Downs has failed to afford any such hearing to plaintiff and that the hearing which resulted in his exclusion failed to pass constitutional muster. I find that he was not afforded a hearing by an impartial tribunal because two of the three persons who voted were dominated by management and, also, because a decision prejudicing valuable rights of plaintiff was rendered adversely to him on the basis of evidence which was grossly inadequate to support the findings made.

In addition I rule that plaintiff has also been deprived of his rights to "property" under the due process clause. Rule 54 of the Massachusetts Racing Commission provides that a person in the position of plaintiff is au-· thorized to take a "final appeal" to the State Racing Commission after an adverse ruling by a private entity such as Suffolk Downs. This right of final appeal is a statutory entitlement which is "property" for purposes of the due process clause. See *Goss v. Lopez*, 419 U.S. 565, 572–73, 95 S.Ct. 729, 42 L.Ed. 2d 725 (1975). What has happened here is that Suffolk Downs, acting, as a practical matter, as a "state agency" of first impression, has refused to accept and honor a reversal of its ruling after an appeal from it to a higher and more authoritative state agency, the State Rac-

ing Commission. This rejection on the part of Suffolk Downs of plaintiff's reinstatement by the final "state agency," the Racing Commission, has effectively nullified and taken away from plaintiff the benefits of his appeal to the State Racing Commission.

Accordingly, an order will enter that Suffolk Downs be permanently enjoined from depriving plaintiff of access to its track in his capacity as a duly· licensed horse trainer on the basis of the charges which have been brought against him to this date.