Sharon D. and James H. HITCHCOCK,
husband and wife, Appellants,

v.

Ted S. and Nell ALLISON, husband and
wife, d/b/a Prairie View Mobile Home
Park, Appellees.

No. 50525.

Supreme Court of Oklahoma.

Nov. 15, 1977.

James H. Werner, Tulsa, for appellants.

Garrison & Pigman by Paul E. Garrison
and Mark O. Thurston, Tulsa, for appellees.

BARNES, Justice:

The single question presented is whether
41 O.S.Supp.1973, § 42, is unconstitutional
when tested by the Fourteenth Amendment
of the United States Constitution as applied
through 42 U.S.C., § 1983, for the reason
that a private person acting under the au-
thority of the statute does so under color of
State law.

The parties are in agreement on the
facts. Appellants-Plaintiffs, Sharon D. and
James H. Hitchcock, husband and wife,
rented a mobile home from Appellees-De-
fendants, Ted S. and Nell Allison, husband
and wife, d/b/a Prairie View Mobile Home
Park, Tulsa, Oklahoma, on an oral tenancy
from month to month (January 1, 1976,
through January 28, 1976) and furnished
the home with their own furniture and
household goods.

The petition states that on January 5,
1976, Appellant, Sharon Hitchcock, filed her
petition for divorce against Appellant,
James H. Hitchcock. She took the children
and went home to mother, leaving behind
the furniture and household goods, clothing,
pictures, and family items, which are, in the
main, mortgaged to several Oklahoma
banks. These items were specifically enu-
merated in a list attached to Appellant's

petition. The Appellant husband left several days later, also leaving behind the aforementioned property.

The mobile home was without heat, as the furnace was not working properly, and the Appellant husband left the cooking range and oven on when the home was vacated. Sub-freezing weather occurred around January 10th, which caused the pipes to burst, resulting in water damage in and about the premises.

Thereafter, Appellees entered the home, caused the pipes to be repaired, removed Appellants' property and stored the same. Appellees were at no time officials of the State of Oklahoma, nor did they seek or receive help from State officials. Further, there was no private contract between the parties setting forth the landlord's right to repossession of such goods on default. Appellants had no notice at the time of entering into the oral lease agreement that Appellees could seize their belongings on default. Nothing in the dealings of the parties permits the conclusion that Appellants agreed or consented in advance to the seizure, either explicitly or by implication.

Subsequent to vacating the premises, Appellant, Sharon Hitchcock, allegedly asked for the return of the property, but was refused by Appellees unless payment was made for unpaid rent and plumbing repairs. Appellees' Response indicates they never refused to deliver the property belonging to Appellants which was exempt from a lien under 41 O.S.Supp.1973, § 41(5).[1]

On February 26, 1976, Appellants filed a replevin action against the Appellees. On March 5, 1976, Appellees filed a Response, Answer, Cross-Petition, and subsequently an Amendment to the Cross-Petition, claiming damages for repairs, unpaid rentals, and cleaning, in the amount of $453.54, and a statutory lien on the personal property. The Trial Court entered its order denying the Writ of Replevin, rendering a money judgment for Appellees for $450.54, and establishing a lien upon the personal property in the possession of Appellees owned by Appellants.

No Court Reporter was available to report the proceedings. Appellants filed an appeal in this Court, Case No. 49,584, and subsequently attempted to get Appellees to approve a narrative statement of the evidence and a Journal Entry of Judgment, which Appellees refused to do, contending no final order or judgment had been entered by the Court.

On December 29, 1976, the Trial Court entered a final judgment, which constitutes the present appeal by Appellants. Thereafter, upon Appellants' motion and by order of this Court, Case No. 49,584 was dismissed as being prematurely filed.

The landlord's lien statute, 41 O.S.1973 Supp., § 42, which is the subject of this appeal, provides:

"An operator shall have a lien upon that part of the property belonging to the tenant which has a value not to exceed the amount of the proper charges owed by the tenant, which may be in a rental unit used by him at the time notice is given, for the proper charges owed by the tenant, and for the cost of enforcing the lien, with the right to possession of the property until the debt obligation is paid to the operator. Provided, however, that such lien shall be secondary to the claim of any prior bona fide holder of a chattel mortgage or to the rights of a conditional seller of such property, other than the tenant."

The other pertinent statute is 42 U.S.C., § 1983, which provides in part:

---

1. 41 O.S.Supp.1973, § 41(5), provides:

"'Property' means any baggage or other property belonging to the tenant which may be in the rental unit used by the tenant but which shall not include all tools, musical instruments or books used by the tenant in any trade or profession, all family portraits and pictures, all wearing apparel, any type of prosthetic or orthopedic appliance, hearing aid, glasses, false teeth, glass eyes, bedding, contraceptive devices, soap, tissues, washing machines, vaporizers, refrigerators, food, cooking and eating utensils, all other appliances personally used by the tenant for the protection of his health, or any baby bed or any other items used for the personal care of babies."

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Appellants bring this appeal stating the main question to be decided is whether a private person acting under the authority of the State statute, 41 O.S.1973 Supp., § 42, does so under color of the State law.

It is well established that purely private action is immune from the restrictions of the Fourteenth Amendment, but to distinguish between private action and State action can sometimes be difficult. See *Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). State action is an elusive concept and cannot be discerned by a precise formula. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). The many factors involved must be sifted and all circumstances weighed.

The authorization by statute of the challenged conduct does not by itself require a finding of State action. See *Culbertson v. Leland*, 528 F.2d 426 (9th Cir. 1975), and *Adams v. Southern California First National Bank*, 492 F.2d 324 (9th Cir. 1973).

In challenging the constitutionality of 41 O.S.Supp.1973, § 42, Appellants rely on *Culbertson v. Leland, supra*, involving the Arizona Innkeeper's Lien Statute, and *Hall v. Garson*, 430 F.2d 430 (5th Cir. 1970).

In *Culbertson, supra*, the statute authorized the keeper of a hotel or lodging house to seize, without notice or judicial procedure, the personal property of a lodger who failed to pay rent. The Culbertsons were renting a hotel room at $20.00 per week beginning in September, 1972. In November they fell one week in arrears and were evicted. Upon eviction, the hotel manager seized, as security for the unpaid rent, personal possessions of the Culbertsons remaining in the room. The Culbertsons brought suit claiming the seizure of their property was made under color of State law, and, in the absence of notice and hearing, violated their constitutional right to due process of law.

That Court considered the question of whether actions of a creditor, acting solely on the authority of a statute, who takes possession of a debtor's property which is unrelated to the debt and which is not subject to prior contractual agreement, were sufficient to constitute State action. The Ninth Circuit in *Culbertson, supra*, found the statute was Appellee Leland's sole authority for the seizure, which would not otherwise have been even colorably legal, and, since the statute was the sine qua non for the activity in question, the State's involvement through that statute was not insignificant. The Court held the State of Arizona had significantly involved itself in the seizure of Appellants' property.

The Court in the *Culbertson case, supra*, recognized its decision was squarely in conflict with *Davis v. Richmond*, 512 F.2d 201 (1st Cir. 1975), and stated as follows:

" * * * The facts in *Davis v. Richmond, supra*, could hardly be closer to the ones in this case. We agree with the court in *Davis* that 'The focus for state action purposes should always be on the impact of the law upon private ordering.' 512 F.2d at 204, quoting Burke and Reber, State Action, Congressional Power and Creditors Rights: An Essay on the Fourteenth Amendment, 47 S.Cal.L.Rev. 1, 47 (1973). But we disagree with the proposition that lien statutes which create new rights in favor of creditor landlords have only a minimal impact on private ordering, especially when the parties themselves have failed to agree on a like ordering in the particular case.

"*Davis* seems to turn on the judgment of the court that a landlord's seizure of the belongings of an evicted tenant was something to be expected in the ordinary course of private affairs, statute or no; the court described that action as 'an obvious and not surprising course.' 512 F.2d at 203. In the circumstances of this

case, we find ourselves unable to agree since we cannot say with confidence that appellants should have expected appellee Leland to do what she did."

The effect of the decision in *Culbertson* is that the Arizona Statute is unconstitutional.

Appellees herein argue that the better reasoned decision is that of the First Circuit, in *Davis v. Richmond, supra*. In that case the plaintiff Davis brought an action under 42 U.S.C., § 1983, against a former landlord asserting that distraint of his personal effects under the Massachusetts Boardinghouse Lien Statute violated the due process clause of the Fourteenth Amendment. That statute was understood as allowing the lienor without court order to take and maintain possession of the lodger's property while charges were outstanding. There the landlord refused ·to allow the plaintiff to remove his personal property from the boardinghouse on the ground that he was in arrears in his rent.

The First Circuit held the alleged conduct did not constitute State action. Although no State machinery or official was involved in the distraint, the plaintiff argued there was significant State involvement from the following factors: Authority to withhold plaintiff's effects was conferred by a Massachusetts statute which, when enacted in 1859, legalized otherwise illegal conduct; the lien law reflects a State policy favoring landlords; and the distraining of private property is the sort of action normally entrusted to a State rather than to private persons.

The Court rejected the plaintiff's argument holding that the boardinghouse lien statute fits logically within the same category as the Rhode Island banker's lien considered in *Fletcher v. Rhode Island Hospital Trust National Bank*, 496 F.2d 927 (1st Cir. 1974), and stated:

" * * * As in *Fletcher, the lien attaches to property within a creditor's ready grasp under circumstances where self-help seems an obvious and not surprising course.* The fact that defendants' conduct was permitted and regulated by state law—as much private conduct is— does not by itself make the conduct's connection with the state sufficiently close so that the private conduct 'may be fairly treated as that of the State itself.'" (Emphasis ours)

That case points out in footnote 5 that the statute merely gives an initial possessory advantage to the boardinghouse keeper (as opposed to leaving the tenant with the unfettered right to make off with the property). The State has not authorized a summary private sale which would end the possibility of eventual repossession by the lodger. The Court in *Davis* further observed:

" * * * By granting the unpaid landlord a defeasible possessory right, the state merely adopts one possible resolution, acting not as participant but rulemaker. * * * We are thus not impressed by plaintiff's characterization of the state as actively 'encouraging' distraint, because in an incidental sense all state regulation would inevitably strike a balance of some kind between the competing interests. Whatever that balance, the state is merely discharging its normal function of clarifying rights in a gray area where a failure to do so would leave the outcome to a private test of strength. The 'impetus' for any given distraint remains wholly private. Only if we were to infer state involvement from the mere existence of state regulatory legislation could we accept plaintiff's position."

Having considered the arguments of both Appellants and Appellees, we must now look to the elements of the case at bar to determine whether Oklahoma has significantly involved itself in the actions of the Appellees. At common law only innkeepers, not hotel, boarding house and lodging house keepers, had a lien on the belongings of their guests. It is clear that Appellees herein did not enjoy the status of innkeepers, for they did not hold the mobile home out as a place for the entertainment of all respectable transient persons who chose to come there; to the contrary, Appellants rented the mobile home as their permanent residence. Thus, the statute was Appellees'

sole authority for the seizure, which would not have been even colorably legal at common law.

The Court in *Davis, supra,* noted that a number of courts have analyzed the State action question in part upon whether the challenged law codified the common law or created new rights, and said therein:

" * * * we are disinclined to decide the issue of state involvement on the basis of whether a particular class of creditor did or did not enjoy the same freedom to act in Elizabethan or Georgian England. The statute at issue is a fairly unremarkable product of the continuing legislative function to define creditors' rights. See *Fletcher, supra,* 496 F.2d at 930. If it goes beyond the common law, it does so merely by broadening the class (innkeepers) having traditional right to a possessory lien. * * *"

We think that merely because a State legalizes certain action does not necessarily signal that the State itself has become a participant. The situation between the landlord and tenant, when the latter defaults on his rent and leaves his effects on the premises, invites the State to establish rules governing the parties' rights.

We note that the statute in question creates only the right to act; it does not require that such action be taken. Appellees exercise of the choice allowed under the statute, where the initiative comes from them and not the State, does not make their actions in doing so "State action" for the purposes of the Fourteenth Amendment. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 357, 95 S.Ct. 449, 457, 42 L.Ed.2d 477 (1974). Furthermore, Appellees' power to enforce the landlord's lien is narrowly confined. It is limited to those goods which are in essence stored with the landlord; enforcement is peaceful. None of the dangers attributed to the grant of a roving commission, due to its lack of definition and broadness, are present here. In the instant case, the challenged action required no seizure in that the Appellees were already in possession.

While Appellants argue their case cogently, and while we are aware of conflicting holdings in the three Federal circuits that have considered the question, we find more persuasive the rationale of *Davis v. Richmond, supra.* We also believe this to be in line with this Court's earlier holding in *Helfinstine v. Martin,* 561 P.2d 951 (Okl.1977), which found the self-help repossession sections of the Uniform Commercial Code as enacted in Oklahoma to be constitutionally sound. Although the holding in *Helfinstine, supra,* was based partly on the premise that the self-help remedy had deep roots in the common law, there were other bases for that opinion. Self-help was further upheld because no State official, either Judge, Clerk of Court, or Police Officer, was involved in the self-help repossession of the collateral. Also the provisions did not define when and whether the creditor would avail himself of private repossession as opposed to formal court action, nor did they define the means or method in which the private repossession would occur. Thus, no State action was found. We think when these same criteria are applied to the case at bar, the same finding—no State action—results.

It is to be further noted that Title 41 O.S.Supp.1973, § 41 (see footnote # 1), exempts almost all necessities from the lien and limits the property held to that which has a value not to exceed the amount of the proper charges owed by the tenant and does not provide for the sale of the property subject to the lien. This is in keeping with the idea expressed in *Davis v. Richmond, supra,* that the State is merely providing rules by which the parties can peacefully settle their dispute rather than acting as a moving party.

For the reasons herein stated, we conclude this case falls squarely within the rationale of *Davis, supra,* and that Appellees' seizure of Appellants' property pursuant to 41 O.S.Supp.1973, § 42, did not constitute State action. We hold that statute is constitutional when tested by the Fourteenth Amendment of the United States

Constitution as applied through 42 U.S.C., § 1983.

AFFIRMED.

All the Justices concur.