**L. Paul DIEFFENBACH, Jr.**

v.

**Robert B. BUCKLEY, Jr., R. Wells Chandler, Donald C. Anderson, Donald J. Tisdale, Donald M. Given, John P. Burrows, Buckley & Zopf Law Partnership Savings Bank of Walpole, Inc., Attorney General of New Hampshire.**

Civ. No. C. 78–192.

United States District Court,
D. New Hampshire.

Jan. 29, 1979.

672

L. Paul Dieffenbach, Jr., pro se.

John J. Zimmerman, Lewis A. McMahon, Keene, N. H., A. J. McDonough, Manchester, N. H., Anne E. Cagwin, Concord, N. H., for defendants.

## OPINION

DEVINE, District Judge.

Plaintiff commenced this civil rights action pursuant to 42 U.S.C. §§ 1983, 1985, grounding jurisdiction on 28 U.S.C. § 1343. Defendants[1] filed various motions to dismiss and/or for summary judgment. The matter came before the Court for hearing, at which evidence was presented, and the Court has examined the pleadings, exhibits, affidavits, interrogatories, and memos on file.[2]

The factual background of the litigation is as follows. In March of 1973, plaintiff purchased certain real estate situated in Acworth, New Hampshire, for the total sum of $21,000. The mortgagee financed $15,500 of this purchase, procuring from plaintiff, as mortgagor, a "power of sale" mortgage (Exhibit B). In November 1975, plaintiff became delinquent in his payments on this mortgage, and he was advised by the defendant Attorneys, representing the mortgagee, that the mortgage would be foreclosed and the premises sold at public auction on December 12, 1975.[3] On that date the mortgagee's representatives appeared and, as they were the only persons present, the property was sold to the mortgagee for the price of $14,800.[4] A foreclosure deed and affidavit of sale as required

---

1. The named defendants were Robert B. Buckley, Jr. (a New Hampshire attorney), R. Wells Chandler (also a New Hampshire attorney), Donald C. Anderson (a New Hampshire State Police officer), Donald J. Tisdale (Assistant Vice President of Savings Bank of Walpole), Donald M. Given (President of the Savings Bank of Walpole), John P. Burrows (a real estate broker), Buckley & Zopf Law Partnership (a law firm of which Attorneys Buckley and Chandler are members) Savings Bank of Walpole, Inc. (a savings bank hereinafter referred to as "mortgagee"), and the Attorney General of New Hampshire.

2. Four days prior to the scheduled hearing, plaintiff also filed a motion for summary judgment but, at hearing, counsel for the defendants objected to this going forward for hearing because they were entitled to ten days in which to respond thereto pursuant to local Rule 11. The Court therefore agreed to defer further action on the summary judgment until it had decided the pending motions.

3. The New Hampshire statutes (RSA 477:29, 479:25) permit foreclosure of a mortgage by use of a "power of sale" as authorized therein. Notice (479:25[I]) must be published for three weeks in a local newspaper, and must also be given to the mortgagor (479:25[II]). The sale must be held on the premises except where a different place of sale is agreed upon in the mortgage (479:25[III]).

4. The applicable New Hampshire statute (RSA 479:27) provides:

 A mortgagee selling under a power contained in a mortgage may be a purchaser at the sale, unless the mortgage contains a provision to the contrary.

by statute (RSA 479:26) were duly filed for recording in the applicable registry of deeds on December 17, 1975 (Exhibit A).

Plaintiff, who had been unsuccessfully attempting to raise money to redeem his property, arrived on the premises shortly after the above-described sale had taken place. He made inquiry of a neighbor who advised him that some unidentified "well-dressed" men had been on the premises shortly before. Plaintiff made no attempt to contact the mortgagee as to whether the sale had taken place as scheduled. He subsequently received additional notices of mortgage payments allegedly due and owing.

Plaintiff and certain of his friends continued in occupancy of the premises until mid-February when defendant Burrows arrived on the scene and advised him that he had been retained to sell the property on behalf of the mortgagee. Plaintiff then went for the first time to the Bank, where defendant Tisdale disagreed with his contention that the sale was illegal. Plaintiff advised Tisdale that he would not leave the premises until dispossessed by judicial order.

In March 1976 defendant Attorneys commenced a possessory action in behalf of mortgagee against plaintiff pursuant to the provisions of RSA 540. This action was filed in the Claremont District Court, and plaintiff entered an appearance therein and filed some additional pleadings. On or about March 15, 1976, defendant Anderson, at the request of the mortgagee, went upon the premises and advised certain of plaintiff's friends who were there present that if they did not leave, they would be subject to arrest for criminal trespass. These friends picked up their belongings and vacated the premises without further action taken. At about this time, defendant Burrows, who had purchased the property from the mortgagee, advised plaintiff in writing of such transfer of title and requested that plaintiff remove his personal belongings from the premises by April 10, 1976. Plaintiff failed to do so, and such property was subsequently removed while he was away from the premises.

Plaintiff then went to the Sullivan County Superior Court and filed various actions in June and August of 1976 against defendant Attorneys, and defendants Tisdale, Burrows, and Savings Bank for alleged deprivation of rights and conversion of his property. Pursuant to Rule 226 (RSA 491:App. Rule 226) of the Superior Court, plaintiff, as a non-resident, was required to post a bond for costs and, on his failure to do so, these actions were dismissed with prejudice. Plaintiff here contends that the applicable mortgage statutes and the aforesaid Rule of Superior Court deprive him of his property without due process, and that he is entitled to declaratory and monetary relief.

■ The standard we here use to assess alleged facts on motions to dismiss is a familiar one: The material facts alleged in the complaint are to be construed in the light most favorable to plaintiff, and taken as admitted, with dismissal ordered only if the plaintiff is not entitled to relief under any set of facts he could prove. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir. 1976); *Lefkowitz v. Lider*, 443 F.Supp. 352, 357 (D.Mass.1978).

In order to state a cause of action in a § 1983 suit, plaintiff must show that the alleged civil rights violation was accomplished "under color of any statute, ordinance, regulation, custom, or usage" of the State of New Hampshire. *Krohn v. Harvard Law School*, 552 F.2d 21, 23 (1st Cir. 1977); *Berrios v. Inter American University*, 535 F.2d 1330, 1331 (1st Cir. 1976), *appeal dismissed* 426 U.S. 942, 96 S.Ct. 2665, 49 L.Ed.2d 1180 (1976); *Davis v. Richmond*, 512 F.2d 201, 202 (1st Cir. 1975); *Fletcher v. Rhode Island Hospital Trust National Bank*, 496 F.2d 927 (1st Cir. 1974), *cert. denied* 419 U.S. 1001, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974).

■ The validity of a power of sale contained in a real estate mortgage has

long been upheld in the courts of New Hampshire. *Very v. Russell*, 65 N.H. 646, 23 A. 522 (1874); *Pearson v. Gooch*, 69 N.H. 208, 40 A. 390 (1897); *Wheeler v. Slocinski*, 82 N.H. 211, 131 A. 598 (1926); *Dugan v. Manchester Federal Savings & Loan Association*, 92 N.H. 44, 23 A.2d 873 (1942); *Reconstruction Finance Corp. v. Faulkner*, 101 N.H. 352, 143 A.2d 403 (1958); *Silver v. First National Bank*, 108 N.H. 390, 236 A.2d 493 (1967). At common law, the mortgagee was barred from purchase at such a sale. *Very v. Russell, supra*. However, commencing with the earliest legislation in 1899 (now codified in RSA 479) this doctrine was changed to allow such purchases. It is, of course, clear that such legislation did not abrogate the long-imposed duty that the mortgagee must exercise good faith and reasonable diligence to protect the rights of the mortgagor under the power of sale. *Wheeler v. Slocinski, supra*.

In the instant case, it is undisputed that the mortgagee complied with the requisite statutory requirements prior to foreclosing under the power of sale (RSA 479:25, 26). Plaintiff knew of the scheduled time and place of the sale and arrived late, but was put upon notice that two "well-dressed" men had been there shortly before his arrival. The foreclosure deed was recorded on December 17, 1975. Plaintiff's failure to initiate contact with the mortgagee to ascertain whether sale had actually been held is not excused by his subsequent receipt of additional statements of mortgage payments due and owing. Even if he had forwarded payments to the mortgagee after commencement of the foreclosure proceeding, the sale would stand as valid in the absence of clear evidence of waiver. *Dugan v. Manchester Federal Savings & Loan Association, supra*.

It is clear that the mortgage statutes here under attack do not create the power of sale foreclosure, but merely serve to regulate and standardize the recognized practice. *Northrip v. Federal National Mortgage Association*, 527 F.2d 23, 27 (6th Cir. 1975). An owner of real property is free to contract with the mortgagee for a power of sale of such property (*Bell Mining Co. v. Butte Bank*, 156 U.S. 470, 477, 15 S.Ct. 440, 39 L.Ed. 497 [1895]), and the validity of such a contractual power of sale is unquestionable. *Scott v. Paisley*, 271 U.S. 632, 635, 46 S.Ct. 591, 70 L.Ed. 1123 (1926).

Most of the courts that have considered constitutional attacks on mortgage statutes permitting foreclosure by power of sale have held that the exercise of such powers pursuant to the statutes do not constitute "state action" and do not amount to deprivation of property without due process. *Charmicor v. Deaner*, 572 F.2d 694 (9th Cir. 1978); *Roberts v. Cameron-Brown Company*, 556 F.2d 356 (5th Cir. 1977); *Barrera v. Security Building & Investment Corporation*, 519 F.2d 1166 (5th Cir. 1975); *Northrip v. Federal National Mortgage Association, supra; Bryant v. Jefferson Federal Savings and Loan Association*, 166 U.S.App.D.C. 178, 509 F.2d 511 (1974); *Y Aleman Corp. v. Chase Manhattan Bank*, 414 F.Supp. 93 (D.Guam 1975); *Kenly v. Miracle Properties*, 412 F.Supp. 1072 (D.Ariz.1976). In arriving at such results, the courts have often considered analogous cases concerned with various "self-help" provisions of the UCC and similar statutes appertaining to personal property.

In *Fletcher v. Rhode Island Hospital Trust National Bank, supra*, this Circuit held that the bank's set-off of funds in the plaintiff's checking accounts against their credit card indebtedness did not amount to "state action", and thus gave no rise to a claim of constitutional dimensions. In *Davis v. Richmond, supra*, the court held similarly that a distraint of personal property pursuant to a state boardinghouse lien statute did not give rise to a civil rights action.

In the course of the latter opinion, the court said:

The fact that defendants' conduct was permitted and regulated by state law—as much private conduct is—does not by itself make the conduct's connection with

the state sufficiently close so that the private conduct 'may be fairly treated as that of the State itself.' *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, at 349, 95 S.Ct. 449, at 453, 42 L.Ed.2d 477 (1974); *Moose Lodge [No. 107 v. Irvis], supra*, 407 U.S. [163] at 176–77, 92 S.Ct. 1965, [32 L.Ed.2d 627].

512 F.2d, at 203.

The plaintiff's reliance here on such cases as *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), is likewise misplaced. In a most recent decision, the Supreme Court, in upholding the validity of a warehouseman's lien, pointed out that the doctrine of these cases is not applicable to a situation where, such as here, there was a total absence of overt official involvement by a public official. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

■ In short, the claims advanced by plaintiff against the power of sale, features of the New Hampshire statutes, and the exercise of such power of sale give rise to no "state action" or constitutional deprivation, and therefore require dismissal.

■ Nor do the actions of the defendant Attorneys in their attempts at eviction and in the defense of plaintiff's subsequent actions constitute "state action", for it is well established that engaging in private litigation does not cause an attorney to become a state actor. *Slotnick v. Goldstein*, 566 F.2d 1167 (1st Cir. 1977); *Lefkowitz v. Lider, supra; Orlando v. Wizel*, 443 F.Supp. 744 (D.Ark.1978). And whatever merit

there might be to the plaintiff's claim that the Superior Court Rule imposing a bond for costs on non-residents is discriminatory (a claim that it is not here necessary to decide), it is obviously not chargeable to any of the named defendants. They lack power to alter or amend such court rule and are entitled to invoke its provisions so long as the Court in its discretion sees fit to impose the rule under its legislatively vested power to do so. In passing, it might be noted that an application in state court to proceed in forma pauperis could well obviate the harshness of which plaintiff complains.

■ As to the defendant Anderson, the State Police officer, it is, of course, arguable that his actions were "under color of state law". However, the evidence adduced before this Court was that he was shown the foreclosure deed by the mortgagee and went upon the premises to advise the occupants thereof that they would be subject to arrest for criminal trespass if they remained thereon.[5] But as between plaintiff and Anderson, it is clear that plaintiff's "personal stake in the outcome of the controversy" between Anderson and those occupants of the premises with whom he spoke is not sufficient "to assure that concrete adverseness which sharpens the presentation of issues". *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *Dimarzo v. Cahill*, 575 F.2d 15, 18 (1st Cir. 1978). The plaintiff was not even upon the premises when Anderson arrived, and he simply has no standing to here challenge Anderson's actions as being in derogation of *his* (as opposed to those of other parties not privy to this litigation) civil rights.

■ There is also little merit to plaintiff's contention that, inasmuch as the mortgagee had commenced a possessory ac-

---

5. RSA 635:2[I] provides:

A person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so, he enters or remains in any place. The crime is a misdemeanor when the order to leave is personally communicated by 'the owner or other authorized person'. RSA 635:2[II](b)(2).

The New Hampshire Court has most recently held that such order may be given by a State Police officer. *State v. Dupuy*, 118 N.H. ——, 395 A.2d 851 (1978).

tion under RSA 540, it could not avail itself of the criminal trespass statute. Section 26 of RSA 540 expressly reserves to the party commencing a possessory action the right to pursue other remedies at common law, and it is well settled that criminal trespass statutes merely codify such common law. *State v. Straw*, 42 N.H. 393 (1861). And whatever complaints plaintiff might have as to the removal and/or destruction of his personal property from the premises lie in the field of tort for conversion, not in the constitutional area.

 The record here is likewise devoid of evidence sufficient to suggest such "racial, or otherwise class-based invidiously discriminatory animus" as is necessary to support any action pursuant to 42 U.S.C. § 1985. *Hahn v. Sargent*, 523 F.2d 461 (1st Cir. 1975), *cert. denied* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). For the reasons hereinabove set forth, it is clear that the action herein must be, and it hereby is, dismissed as to all defendants,[6] as this action fails to state claims over which this court has jurisdiction pursuant to 42 U.S.C. §§ 1983, 1985.

SO ORDERED.

---

**6.** At the conclusion of the hearing, the Court orally ordered dismissal as to the Attorney General. He was named as a party due to the plaintiff's erroneous belief that he must be such when a constitutional challenge to a state stat-ute was interposed. The Attorney General has no connection with the enforcement of the statutes here at issue and is, therefore, not a proper party. *Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976).